UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CORTNEY C. HALLIBURTON,

                Plaintiff,

v.

HEIDI WASHINGTON et al.,

                Defendants.

_____/

Case No. 2:25-cv-165

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington, Knaus, Naeyaert, and Sadak. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: official capacity claims for monetary relief, First Amendment free exercise claims concerning the inability to purchase specific haircare products, First Amendment Establishment Clause claims, Fourteenth Amendment equal protection claims, Eighth Amendment conditions of

confinement claims regarding "basic human needs" and "totality of the conditions," "supervisory liability" claims, and First Amendment access to the courts claims. Plaintiff's First Amendment free exercise claims against Defendants Bauman, Tasson, Dirschell, Bush, and Heyrman, and Eighth Amendment medical care claim against Defendant Doe remain in the case. The Court will further deny Plaintiff's motion to appoint counsel (ECF No. 3).

<u>**Discussion**</u>

## I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington, MDOC Deputy Director Jeremy Bush, MDOC Special Activities Coordinator Adrian Dirschell, and the following LMF staff: Warden Catherine S. Bauman, Deputy Warden Doug Tasson, Prisoner Counselor Ryan J. Knaus, Corrections Officer Unknown Heyrman, Resident Unit Manager J. Naeyart, Medical Care Provider Shelley R. Sadak, and Dentist Unknown Party #1, named as "John Doe." (Compl., ECF No. 1, PageID.2–3.) Defendants are named in both their personal and official capacities. (*Id.*)

Plaintiff alleges that, on June 6, 2023, Plaintiff attempted to freely exercise his religious beliefs as a Rastafarian by submitting a "Religious Beliefs/Material Request" addressed to Defendant Bauman. (*Id.*, PageID.9.) In that request, Plaintiff asked for permission to keep his head covered while at LMF and, if a search was needed, that Plaintiff's head covering be removed in private. (*Id.*) Plaintiff states that it is his sincerely held religious belief that Plaintiff's "Holy Locks (hair) are to remain covered while in public." (*Id.*) Defendant Bauman denied Plaintiff's request

and sent it back to Plaintiff the following day. (*Id.*)[1] Defendant Bauman did not forward the request to the facility's chaplain or to Defendant Dirschell. (*Id.*)

On June 8, 2023, Plaintiff wrote to Defendant Dirschell, stating that "he was being denied the right to freely exercise/practice his religion since it was not recognized by the [MDOC]." (*Id.*) Plaintiff also attached his original June 6, 2023, request. (*Id.*) Plaintiff did not receive a response from Defendant Dirschell. (*Id.*)

On June 21, 2023, Non-Party Officer Anderson demanded that Plaintiff remove his head covering while in the yard. (*Id.*) Plaintiff complied and proceeded to his cell abruptly, because he was humiliated. (*Id.*) Officer Anderson then summoned Plaintiff to the common area, where he again demanded that Plaintiff remove his head covering or be taken to segregation. (*Id.*) Plaintiff complied. (*Id.*, PageID.10.) He was then strip searched and nothing was recovered. (*Id.*)

Plaintiff filed a grievance regarding the events of June 21, 2023. (*Id.*, PageID.10.) At the grievance interview, the interviewer told Plaintiff that Defendant Bauman had said that Plaintiff was not being harassed or retaliated against. (*Id.*) The interviewer further explained that Plaintiff was only taken into the back office for the search because of Plaintiff's request that he only be required to remove his head covering in private. (*Id.*)

On July 10, 2023, Plaintiff submitted a request for dental services to Defendant Sadak for a filling and teeth cleaning. (*Id.*)

On July 25, 2023, Plaintiff submitted a request to Defendant Tasson for a religious meal accommodation and that he be permitted to wear his head covering in the law library. (*Id.*) Defendant Tasson responded that Plaintiff was not allowed to wear his head covering in the law

---

[1] As additional support for his allegations, Plaintiff refers to various exhibits. (*See, e.g.,* Compl., ECF No. 1, PageID.9 (referring to "Exhibit A").) However, the complaint received by the Court did not contain any attached exhibits.

library. (*Id.*) Defendant Tasson told Plaintiff that he would have to use the segregation law library request form to gain access to the law library. (*Id.*)

On August 4, 2023, Plaintiff submitted a follow-up request for a dental filling. (*Id.*, PageID.11.) Defendant Sadak responded that Plaintiff was on the dental exam list. (*Id.*) Plaintiff reported to healthcare on August 7, 2023, and was allowed to keep his head covering on during his teeth cleaning. (*Id.*) Plaintiff was also told that he was on the list for the filling. (*Id.*)

Plaintiff sent multiple requests using the segregation law library form. (*Id.*) The requests went unanswered until a request was processed on August 18, 2023. (*Id.*)

On September 5, 2023, Plaintiff submitted a third request that his cavity be filled. (*Id.*) Defendant Sadak responded that Plaintiff was on the list and would be called when his name reached the top of the list. (*Id.*)

On September 20, 2023, Plaintiff submitted a meal choice form to Defendant Tasson, requesting that Plaintiff not receive soy products "as this was a violation of the Plaintiff's religious tenets." (*Id.*) Plaintiff did not receive a response or a meal accommodation. (*Id.*) He filed a grievance regarding that issue. (*Id.*) On October 27, 2023, during the grievance interview, Plaintiff received the proper form for a meal accommodation to submit to non-party Chaplain Wahl. (*Id.*)

On October 15, 2023, Plaintiff submitted a catalogue order form to purchase proper haircare products. (*Id.*, PageID.12.) He alleges that the products available from the prisoner store would damage his "holy locks." (*Id.*) Plaintiff's request was denied with the explanation that all healthcare items must be purchased through the prisoner store. (*Id.*)

On October 20, 2023, Plaintiff submitted another request for dental care to Defendant Sadak, explaining that Plaintiff had an abscess in his tooth and a toothache. (*Id.*) That day, Defendant Sadak scheduled Plaintiff to see the dentist. (*Id.*)

4

Plaintiff reported to healthcare for his scheduled dental appointment on October 27, 2023. (*Id.*) Plaintiff explained to the dentist that Plaintiff was in "excruciating pain." (*Id.*) Defendant Heyrman then told Plaintiff that head coverings are not allowed inside healthcare and that Plaintiff's head covering would need to be removed (*Id.*) Plaintiff informed Defendant Heyrman that he was not required to remove his head covering during his August teeth cleaning; however, after a series of telephone calls, Defendant Heyrman told Plaintiff that Plaintiff "was lying about his religion" and would need to remove it and receive a misconduct charge for lying or be required to leave without dental care. (*Id.*, PageID.12–13.) Plaintiff left healthcare without dental care to avoid a misconduct charge. (*Id.*, PageID.12.)

On October 28, 2023, Plaintiff submitted a letter to Defendant Tasson regarding the events of October 27, 2023. (*Id.*) Plaintiff did not receive a response. (*Id.*)

On November 6, 2023, Plaintiff sent a letter to Defendant Tasson regarding his unfulfilled law library requests. (*Id.*) Plaintiff again did not receive a response. (*Id.*)

On November 8, 2023, Plaintiff was called to the commons area by non-party Officer Hill, who told Plaintiff that "he had received a phone call from Defendant Tasson, and was told to confiscate Plaintiff's head covering." (*Id.*, PageID.13.) Officer Hill also stated that "he was told to issue a misconduct for the head covering as the Plaintiff's religion was not recognized." (*Id.*, PageID.13.) Plaintiff was forced to uncover his head in the presence of others and received a misconduct charge that resulted in three days' loss of privileges. (*Id.*, PageID.14.) Plaintiff filed a grievance on December 8, 2023. (*Id.*)

Plaintiff submitted a healthcare request form for dental care on December 18, 2023, and, on December 20, 2023, he filed a grievance alleging medical malpractice. (*Id.*, PageID.16.)

On January 11, 2024, Plaintiff received a religious meals questionnaire from Chaplain Wahl so that Plaintiff could request a meal accommodation. (*Id.*, PaegID.17.) Plaintiff completed the questionnaire and sent it to Defendant Dirschell but did not receive a response. (*Id.*)

On February 20, 2024, Plaintiff requested to be transferred to Cedar Unit because Cedar Unit used the segregation law library request form to access legal materials. (*Id.*) Plaintiff's request was denied because Cedar Unit was reserved for prisoners needing protective custody, which Plaintiff did not need. (*Id.*) Plaintiff then "refused to lock (reside) in Maple Unit" and received a misconduct charge resulting in ten days of detention. (*Id.*)

On February 26, 2024, Plaintiff told the security classification committee that "he was in fear of his life" and again requested to be transferred to Cedar Unit. (*Id.*) His request was denied with the explanation that Plaintiff was a "serious threat to the good order of the facility," and he was sent to Pine Unit. (*Id.*, PageID.18.)

Also on February 20, 2024, Plaintiff received a notice of intent to conduct an administrative hearing for food items considered contraband. (*Id.,* PageID.17.) During the March 4, 2024, hearing, Plaintiff argued that, without proper meal accommodation, commissary was his only food source. (*Id.*, PageID.18.) Plaintiff's argument was rejected, and the contraband food items were destroyed. (*Id.*) Plaintiff submitted a grievance concerning these events. (*Id.*)

On March 10, 2024, Plaintiff was told that he would be released from segregation back to Maple Unit. (*Id.*) Plaintiff again refused, received another misconduct charge, and, this time, received ten days in segregation and 30 days' loss of privileges. (*Id.*)

On March 21, 2024, Plaintiff requested to be sent to a new facility. (*Id.*) He was released from segregation to Cedar Unit. (*Id.*)

On April 3, 2024, Plaintiff submitted another request for recognition of the Rastafarian religion to Defendant Knaus to be served upon Defendant Bauman. (*Id.*, PageID.18–19.) Plaintiff never received any response from Defendant Bauman. (*Id.*, PageID.19.)

Plaintiff then submitted the request for recognition of the Rastafarian religion to Chaplain Wahl on April 18, 2024. (*Id.*, PageID.20.) Chaplain Wahl responded, stating that he had been unsuccessful in obtaining information regarding the documents originally sent to Defendant Bauman. (*Id.*) He gave Plaintiff a new religious recognition request form and a copy of the revised policy set to take effect on April 29, 2024. (*Id.*, PageID.21.)

On May 16, 2024, Plaintiff provided Chaplain Wahl with a completed religious recognition request form and a religious accommodation request for a head covering. (*Id.*) The documents were "processed" and returned to Plaintiff on May 17, 2024. (*Id.*)

On July 10, 2024, Plaintiff was called to the common area by non-party Inspector Johnston, who advised Plaintiff that Defendant Bauman had authorized him to remove Plaintiff's head covering in the presence of others. (*Id.*) Plaintiff asked Inspector Johnston to take Plaintiff to a private location, but he refused. (*Id.*) Plaintiff filed a grievance against Defendant Bauman. (*Id.*)

On August 15, 2024, Plaintiff received a response from Defendant Bauman stating that Defendant Bush "denied Rastafarian as a recognized religion in the MDOC." (*Id.*, PageID.22.) The response also provided that Plaintiff was prohibited from bringing the issue before the "CAC" for two years. (*Id.*) Plaintiff responded to the denial on August 19, 2024, and September 23, 2024, with requests for reconsideration. (*Id.*, PageID.22–25.) He did not receive a response. (*Id.*, PageID.25.)

Plaintiff then sent correspondence to Defendant Washington on October 14, 2024, addressing "the unethical conditions the Plaintiff and other Rastafarian members were facing

within the [MDOC]," and attaching the documents previously sent to Defendant Dirschell. (*Id.*, PageID.25–26.) Having not received a response, Plaintiff sent additional correspondence to Defendant Washington on December 16, 2024, and filed a grievance against her and others on December 21, 2024. (*Id.*, PageID.26.) Non-party Grievance Coordinator Lancour later confirmed that Plaintiff's grievance was never processed. (*Id.*)

On January 17, 2025, Plaintiff finally received a dental appointment and agreed to remove his head covering to receive dental care. (*Id.*) Defendant Doe performed an exam, at which time Plaintiff told Defendant Doe that he was in "excruciating pain" that could not be relieved using ibuprofen or aspirin. (*Id.*) Defendant Doe told Plaintiff he would address Plaintiff's molar at a later appointment. (*Id.*, PageID.27.) However, as of the filing of Plaintiff's complaint on June 29, 2025, Defendant Doe had yet to address Plaintiff's cavity. (*See id.*, PageID.30.) Plaintiff filed a grievance against Defendant Doe, which was never processed. (*Id.*, PageID.27.)

On January 30, 2025, Plaintiff again sent correspondence to Defendants Washington, Bush, and Dirschell regarding "the unreasonable, unethical conditions he and other Rastafarian members were facing" and requesting reconsideration of the decision denying recognition of the Rastafarian religion. (*Id.*) Plaintiff did not receive any responses and, once again, filed grievances against Defendants. (*Id.*)

On April 29, 2025, Plaintiff's mother called the MDOC regarding Plaintiff's need for dental care. (*Id.*, PageID.28.)

Plaintiff states that he brings the following itemized claims:

1. Free exercise of religion
2. Establishment of religion
3. Religious discrimination (equal protection)
4. Cruel and unusual punishment (basic human needs)
5. Cruel and unusual punishment (totality of the conditions)
6. Cruel and unusual punishment (serious medical needs)

       7.   Supervisory liability

       8.   Access to the courts

(*Id.*, PageID.4.)[2] As relief for the events described within the complaint, Plaintiff seeks declaratory, injunctive, and monetary relief. (*Id.*, PageID.30–33.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

---

[2] Because Plaintiff specifically identifies the claims that he intends to bring in this suit, the Court does not construe Plaintiff's complaint to raise any other claims.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff brings claims against Defendants in their official as well as personal capacities. (Compl., ECF No. 1, PageID.2–3.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages. However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. Similarly, Plaintiff may not seek

monetary damages against Defendants in their official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983."). Therefore, the Court will dismiss Plaintiff's official capacity claims for money damages.

Plaintiff also seeks injunctive and declaratory relief. Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Va. Ofc. for Prot. and Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.) The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Because Plaintiff seeks prospective injunctive and declaratory relief addressing alleged ongoing violations with respect to interference with the free exercise of Plaintiff's religion and denial of adequate dental care, Plaintiff's official capacity claims for injunctive and declaratory will be addressed in connection with the substance of Plaintiff's § 1983 claims.

## B.    First Amendment Free Exercise Clause Claims

Plaintiff alleges that "all claims are related to, and arose from, the same incident and issue of free exercise of religion." (Compl., PageID.4.) The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental

concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff alleges that he practices the Rastafarian religion. (Compl., ECF No. 1, PageID.9.) He claims that, as a Rastafarian, Plaintiff sincerely believes that he must keep his hair covered while in public (*id.*) and must not consume a diet that includes soy products (*id.*, PageID.11). At this stage of the proceedings, the Court accepts as true Plaintiff's allegation that he sincerely holds these religious beliefs. The next consideration is "whether the challenged practice of the prison officials infringes on the religious belief." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989).

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[T]he

Government substantially burdens an exercise of religion when it 'place[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs . . . or effectively bar[s] his sincere faith-based conduct.'" *New Doe Child #1 v. Cong. of the U.S.*, 891 F.3d 578, 589 (6th Cir. 2018) (quoting *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014)). It "is a is a difficult threshold to cross." *Living Water Church of God*, 258 F. App'x at 736. "[A] 'substantial burden' must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id.*

### 1.    Defendant Washington

Plaintiff alleges that Defendant Washington was "personally involved" in the alleged deprivation of Plaintiff's First Amendment rights because she signed and authorized the policy under which Defendants Bush and Dirschell denied formal recognition to the Rastafarian religion and otherwise offered Plaintiff "no rise to relief" when other issues concerning Plaintiff's religious exercise were brought to her attention. (Compl., ECF No. 1, PageID.5–6.)

However, Plaintiff fails to provide the Court with any facts that would plausibly suggest that the creation of a policy *alone* substantially burdens Plaintiff's religious exercise where MDOC Policy provides a process by which Plaintiff could request recognition of his religion. The MDOC policy concerning the submission of requests for religious recognition and accommodations in effect at the time of Plaintiff's June 6, 2023, request provided:

> K. A prisoner or group of prisoners belonging to a religious group not recognized by the Department may request Department recognition of that group by submitting a written request to the Warden or designee. The request shall include information regarding the group's religious beliefs and practices. The Warden shall ensure all requests and supporting documents are referred to the CFA Special Activities Coordinator for review through the appropriate chain of command. The CFA Special Activities Coordinator shall present the material to the CAC for additional

review, if needed. The CFA Special Activities Coordinator shall forward their recommendation, and that of the CAC if applicable, to the Deputy Director for a final determination.

L. The Deputy Director shall make the final decision as to whether a religious group will be granted Department recognition, and if so, whether group religious services and activities and personal religious property will be allowed. The group shall be granted recognition if it is determined to be a bona fide religious group with beliefs and practices not adequately represented by an existing recognized religious group, based on any recommendation received from the CAC. The decision whether to allow the group to conduct group religious services and activities, and whether to allow personal religious property, shall be based on whether the practice of the religion or possession of the property item would pose a custody and security threat. The decision whether to allow the group to conduct group religious services and activities also shall be based on the number of prisoners identified as belonging to the religious group. All Assistant Deputy Directors (ADD) and Wardens shall be advised of the final decision.

MDOC Policy Directive 05.03.150.K–L (eff. Jan. 3, 2022).[3]

As explained above, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *Konikov*, 410 F.3d at 1323, or does not "pressure the individual to violate his or her religious beliefs." *Living Water Church of God*, 258 F. App'x at 734. If that were enough, it would render meaningless the word "substantial." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003).

Requiring that Plaintiff submit his requests in accordance with a policy is not a substantial burden. Therefore, Defendant Washington, by virtue of her creation of a policy alone, has not violated Plaintiff's free exercise of religion.

Plaintiff also faults Defendant Washington for failing to act. (Compl., ECF No. 1, PageID.5.) Plaintiff alleges that he sent correspondence to Defendant Washington on more than

---

[3] Plaintiff relies upon and references MDOC policy in his allegations. (Compl., ECF No. 1, PageID.9.) Although the policy directive is not attached to the complaint, the Court may consider it even at this early stage of the proceedings because it is "referred to in the complaint and [is] central to the plaintiff's claim or [because it is a] matter[] of public record." *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024) (internal quotation marks and citations omitted).

one occasion regarding the alleged "unethical conditions the Plaintiff and other Rastafarian members were facing within the [MDOC]," and attaching the documents previously sent to Defendant Dirschell. (*Id.*, PageID.25–26.) Plaintiff never received a response from Defendant Washington. (*Id.*)

Plaintiff's allegations against Defendant Washington, even accepted as true, do not state a § 1983 claim. Government officials, such as Defendant Washington, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that

15

the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff has not alleged facts that would demonstrate that Defendant Washington played any role deciding Plaintiff's religious requests under MDOC policy. Instead, Plaintiff faults Defendant Washington for not expressing her disagreement with how other Defendants were performing their jobs. This alleged failure to act, without more, does not give rise to liability under section 1983. *See Grinter*, 532 F.3d at 576; *Shehee*, 199 F.3d at 800.

### 2.    Defendants Bauman, Tasson, Bush, and Dirschell

Under MDOC Policy Directive 05.03.150.K–L, described above, Defendants Tasson, Bauman, Bush, and Dirschell all played an active role in considering Plaintiff's religious requests. Plaintiff alleges that Defendant Bauman denied Plaintiff's June 6, 2023, request to keep his head covered while in public without submitting the request to the facility's chaplain or to Defendant Dirschell for further review (Compl., ECF No, 1, PageID.9) and later ordered non-party Inspector Johnston to remove Plaintiff's head covering in the presence of others (*id.*, PageID.21). Plaintiff faults Defendant Tasson for denying Plaintiff's request to wear a head covering in the law library (Compl., ECF No. 1, PageID.10) and in public generally (*id.*, PageID.13) and denying Plaintiff's request for a soy-free diet (*id.*, PageID.12). Plaintiff claims that Defendant Dirschell did not respond to Plaintiff's request to wear a head covering while in public (*id.*, PageID.9) or Plaintiff's request for a soy-free diet (*id.*, PageID.17). And Plaintiff alleges that, on April 3, 2024, Plaintiff

16

submitted a request for recognition of the Rastafarian religion, including an affidavit signed by other Rastafarian prisoners, to Defendant Knaus to be served upon Defendant Bauman. (*Id.*, PageID.18–19.) Thereafter, on August 15, 2024, Plaintiff learned that Defendant Bush "denied Rastafarian as a recognized religion in the MDOC." (*Id.*, PageID.22.)

Taking these facts as true and drawing all reasonable inferences in Plaintiff's favor, the Court will allow Plaintiff to proceed with his First Amendment free exercise claims against Defendants Bauman, Tasson, Bush, and Dirschell.

### 3.    Defendant Knaus

The Court will also dismiss Plaintiff's First Amendment free exercise claim against Defendant Knaus. Plaintiff alleges only that Plaintiff submitted a request for recognition of the Rastafarian religion to Defendant Knaus to be served upon Defendant Bauman. (Compl., ECF No. 1, PageID.18–19.) Plaintiff does not allege that Defendant Knaus personally made any decision or otherwise played any role in interfering with Plaintiff's ability to exercise his religion.

### 4.    Defendant Heyrman

Plaintiff alleges that Defendant Heyrman refused to allow Plaintiff to wear a head covering inside the healthcare unit, telling Plaintiff that he believed that Plaintiff "was lying about his religion" and that Plaintiff would need to remove it and receive a misconduct charge for lying or be required to leave without dental care. (*Id.*, PageID.12–13.) Taking Plaintiff's allegations as true as is required at this stage, the Court will allow Plaintiff to proceed with his First Amendment free exercise claim against Defendant Heyrman.

### 5.    Defendant Naeyaert

Plaintiff alleges in the section of his complaint titled, "Defendants Personally Involved," that Defendant Naeyart "was made aware" that Plaintiff was not provided with a religious meal and that his commissary food items were confiscated but failed to take action to correct the

problems. (*Id.*, PageID.7.) However, the body of Plaintiff's complaint does not contain any factual allegations concerning the knowledge or actions of Defendant Naeyaert.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

In this action, Plaintiff does not set forth any facts concerning Defendant Naeyaert's knowledge, responsibility, or actions concerning Plaintiff's religious requests. And, as discussed above, liability cannot be imposed for the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*,

310 F.3d at 899; *Summers*, 368 F.3d at 888; *Shehee*, 199 F.3d at 300. Therefore, Plaintiff's conclusory claims against Defendant Naeyaert fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and will be dismissed.

### 6.    Claims Related to Denial of Hair Care Products

Plaintiff alleges that he was unable to purchase haircare products that would not damage his "holy locks." (Compl., ECF No. 1, PageID.12.) Any First Amendment free exercise claim based upon this allegation would fail for two reasons. First, Plaintiff does not allege facts to plausibly suggest that this inability to purchase specific haircare products infringed on any sincerely held religious belief. Indeed, Plaintiff does not discuss any religious beliefs relative to haircare other than the requirement that Plaintiff keep his head covered while in public. And second, as with any § 1983 claim, "each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 676. Thus, it remains Plaintiff's obligation to attribute factual allegations to particular named defendants. *See Twombly*, 550 U.S. at 544. Here, Plaintiff does allege that any named Defendant was involved in denying Plaintiff the ability to purchase specific haircare products.

Therefore, for each of the foregoing reasons, the Court will dismiss Plaintiff's free exercise claim to the extent premised upon Plaintiff's inability to purchase specific haircare products.

### C.    First Amendment Establishment Clause Claims

In addition to his free exercise claims, Plaintiff brings First Amendment claims for violation of the First Amendment's Establishment Clause.

> The Establishment Clause of the First Amendment prohibits the enactment of any law "respecting an establishment of religion." U.S. Const. amend. I. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

*Maye v. Klee*, 915 F.3d 1076, 1084–85 (6th Cir. 2019). An official violates the Establishment Clause when he "confers a privileged status on any particular religious sect or singles out a bona fide faith for disadvantageous treatment." *Id.* at 1084. Here, Plaintiff has not alleged facts that would indicate that any named Defendant took action that preferred or disadvantaged one religious denomination over another, a failure that is fatal to his claim. Accordingly, the Court will dismiss Plaintiff's Establishment Clause claim.

### D.    Fourteenth Amendment Equal Protection Claims

Plaintiff also alleges that he was deprived of "equal protection." The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must plead facts to show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Plaintiff's complaint contains no facts or allegations to support his equal protection claim. He fails to identify any prisoner who was similarly situated to Plaintiff in all relevant respects but treated differently. Instead, any allegations of discriminatory treatment are wholly conclusory, which, again, fails to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, for this reason as well, Plaintiff's equal protection claim will be dismissed

E.    **Eighth Amendment Claims for "Basic Human Needs" and "Totality of the Conditions"**

Plaintiff brings Eighth Amendment claims for denial of "basic human needs" and the "totality of the conditions." (Compl., ECF No. 1, PageID.4.) In reviewing Plaintiff's complaint, the Court understands these allegations to refer to the denial of soy-free meals.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard

21

to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

Here, Plaintiff does not allege that Defendants failed to provide Plaintiff with nutritious meals, only meals that would accommodate Plaintiff's soy-free diet. A prisoner's choices with respect to food, even religious choices, do not implicate the Eighth Amendment. As this Court explained in rejecting a similar claim:

> [P]laintiff's complaint does not allege that he was denied food, or that even that he was denied wholesome or nutritionally adequate food. Instead, plaintiff alleges that he ate only fruits and vegetables solely because of his religious preference for a kosher diet. Although such an allegation might state a claim for violation of the First Amendment's free exercise clause, an allegation that a prisoner has elected not to consume the "whole meals" provided by the prison – and solely because of his religious preference – does not state a claim for violation of the Eighth Amendment.

*Mobley v. Smith*, 2007 WL 1650934, at *6 (W.D. Mich. June 4, 2007). *See also Turner v. Welkal*, 2014 WL 347815, at *9, (M.D. Tenn. Jan. 31, 2014) ("The court concludes that the plaintiff's factual allegations concerning missed meals and being served food that did not comport with his religious convictions, construed as true, fail to establish a violation of the plaintiff's Eighth Amendment rights"); *Burks v. Campbell*, 2018 WL 6504173, at *2 (E.D. Mich. Dec. 11, 2018)

("A denial of a religious diet cannot be grounds for an Eighth Amendment claim"). Accordingly, the Court will dismiss Plaintiff's Eighth Amendment conditions of confinement claims for failure to state a claim.

### F.      Eighth Amendment Medical Care Claims

Plaintiff alleges that he has been denied adequate dental care. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care under the Eighth Amendment has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim,

however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1.    Defendant Sadak

Plaintiff alleges that he submitted a request to Defendant for a filling and teeth cleaning on July 10, 2023. (Compl., ECF No. 1, PageID.10.) Defendant Sadak responded that Plaintiff was on the exam list. (*Id.*, PageID.11.) On August 7, 2023, Plaintiff received a teeth cleaning and was told that he was on the list for the filling. (*Id.*)

Plaintiff then submitted multiple requests for his cavity to be filled. (*Id.*) Each time, Defendant Sadak told him that he would be called when his name reached the top of the list. (*Id.*) However, when Plaintiff submitted a request indicating that he had an abscess and was in pain,

Defendant Sadak immediately scheduled Plaintiff to see the dentist even though his name had not reached the top of the list. (*Id.*) These allegations, taken as true, do not suggest that Defendant Sadak was deliberately indifferent to Plaintiff's serious medical needs.

"Dental needs fall into the category of serious medical needs because dental care is one of the most important needs of inmates." *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (quoting *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008)) (internal quotation marks omitted). "Nevertheless, not all dental problems constitute serious medical needs. Rather, '[a] cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities.'" *McCarthy*, 313 F. App'x at 814 (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)). As the Second Circuit has recognized:

> Ordinarily, a tooth cavity is not a serious medical condition, but that is at least in part because a cavity is so easily treatable. Absent intense pain or other exigency, the treatment of a cavity (in or out of prison) can safely be delayed by the dentist's schedule or the patient's dread or neglect, can be subject to triage or the management of care, can be mitigated or repaired temporarily, and can be coordinated with other related conditions that need to be treated together.

*Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000). However, cavities causing "significant pain and discomfort," when left untreated for a prolonged period may constitute a serious medical need. *McCarthy*, 313 F. App'x at 814.

Defendant Sadak's actions align with the foregoing precedent. At the time that Defendant Sadak delayed the treatment of Plaintiff's cavity until he reached the top of the dentist's list for scheduling purposes, there was no indication that Plaintiff was experiencing intense pain or otherwise suffering from an objectively serious medical condition. However, upon learning of Plaintiff's complaints of pain and abscess, Defendant Sadak immediately scheduled Plaintiff to

see the dentist. The Court finds that Defendant Sadak's actions did not violate Plaintiff's Eighth Amendment right to adequate medical care.

Plaintiff also alleges that Defendant Sadak "neglect[ed] to process healthcare request forms submitted by the Plaintiff." (Compl., ECF No. 1, PageID.7.) However, Plaintiff's complaint contains no well-pleaded factual allegations to support this conclusory allegation. Plaintiff does not allege the date or content of these alleged forms and does not allege how this alleged "neglect[]" could rise to the level of deliberate indifference. Liability cannot be imposed for negligence, *Estelle*, 429 U.S. at 105–06, or the mere failure to act, *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888; *Shehee*, 199 F.3d at 300. Therefore, any additional claims against Defendant Sadak fail to meet even the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and will be dismissed.

### 2.    Defendant Doe

Plaintiff alleges that, once he received the January 17, 2025, dental appointment and was willing to remove his head covering to attend, Defendant Doe performed an exam and x-rays and told Plaintiff he would address Plaintiff's molar at a later appointment. (Compl., ECF No. 1, PageID.27.) During the exam, Plaintiff told Defendant Doe that he was in "excruciating pain" that could not be relieved using ibuprofen or aspirin. (*Id.*) It appears that, as of the filing of Plaintiff's complaint on June 29, 2025, Defendant Doe had yet to address Plaintiff's cavity. (*See id.*, PageID.30.) Taking these allegations as true, the Court will allow Plaintiff to proceed with his medical care claim against Defendant Doe.

### 3.    "Supervisory Liability" Claims

Finally, Plaintiff states that he seeks to bring claims for "supervisory liability" (Compl., ECF No. 1, PageID.4.) However, as discussed above, government officials may not be held liable

for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495.

The Court has addressed Plaintiff's claims against Defendants where Plaintiff has alleged that Defendants were personally involved in the alleged deprivations of Plaintiff's constitutional rights. However, any claims against Defendants based solely upon their supervisory roles will be dismissed.

### G.    First Amendment Access to the Courts Claim

Plaintiff alleges that he was denied access to the Courts (Compl., ECF No. 1, PageID.4), presumably based upon Plaintiff's inability to access the law library or legal materials.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead that the defendants actions have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

28

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff's complaint does not include any well-pleaded factual allegations that would allow the Court to infer that Plaintiff's inability to access the law library or legal materials hindered a non-frivolous legal claim in a direct appeal, habeas corpus application, or civil rights claim. Therefore, any claims for interference with Plaintiff's access to the courts are properly dismissed.

To the extent that Plaintiff is attempting to raise a First Amendment access to the Court's claim based upon the denial of Plaintiff's grievances, he cannot. Defendants' actions (or inactions) in response to Plaintiff's grievances have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be

compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis*, 518 U.S. at 355 (requiring actual injury); *Bounds*, 430 U.S. at 821–24. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Considering the foregoing, the Court finds that Plaintiff has failed to state a cognizable First Amendment claim for interference with Plaintiff's access to the courts.

### III.    Motion to Appoint Counsel

With his complaint, Plaintiff filed a motion to appoint counsel. (ECF No. 3.) In his motion, Plaintiff states that he is unable to afford counsel, that his imprisonment will hinder his ability to litigate this case, and that counsel would be better able to present evidence, cross examine witnesses, and conduct a trial. (*Id.*, PageID.43–44.)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action

without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. The Court will therefore deny Plaintiff's request for appointment of counsel (ECF No. 3).

<u>Conclusion</u>

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants Washington, Knaus, Naeyaert, and Sadak will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: official capacity claims for monetary relief, First Amendment free exercise claims concerning the inability to purchase specific haircare products, First Amendment Establishment Clause claims, Fourteenth Amendment equal protection claims, Eighth Amendment conditions of confinement claims regarding "basic human needs" and "totality of the conditions," "supervisory liability" claims, and First Amendment access to the courts claims. Plaintiff's First Amendment free exercise claims against Defendants Bauman, Tasson, Dirschell, Bush, and Heyrman, and the Eighth Amendment medical care claim against Defendant Doe remain in the case. The Court will further deny Plaintiff's motion to appoint counsel (ECF No. 3).

An order consistent with this opinion will be entered.


Dated:   September 11, 2025                          /s/ Paul L. Maloney
                                                     Paul L. Maloney
                                                     United States District Judge

31